IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

CHRISTOPHER SHEERER

No. 24-mj-8378-PGL

**DEFENDANT CHRISTOPHER SHEERER'S MOTION TO REVOKE MAGISTRATE JUDGE'S DETENTION ORDER**

Pursuant to 18 U.S.C. § 3145(b), Defendant Christoper Sheerer respectfully requests that the District Court convene a hearing to conduct a *de novo* review and revoke the Magistrate Judge's order of pre-trial detention. Dr. Sheerer submits that the government failed to meet its burden to prove, by clear and convincing evidence, that there is no set of conditions that can reasonably assure his appearance and the safety of the community.

**BACKGROUND**

Dr. Sheerer was first brought before the Court on July 19, 2024, pursuant to a Complaint charging him with one count each of possession and distribution of child pornography. The Magistrate Judge's Detention Order provides a summary of the factual allegations underlying the charges. Det. Order ("Order"), D.E. 9, at 4-6.

The Magistrate Judge held a detention hearing on July 23. Pretrial Services recommended that Dr. Sheerer be released on Personal Recognizance, with the following conditions: home detention, backed by electronic monitoring; a prohibition on accessing the internet, unless authorized by U.S. Probation; a prohibition on possession of any internet-capable device; that any internet-capable devices owned by others in the residence be password-protected, and that family members remove their devices from the residence when they are not home. Pretrial Services Report

("PTSR") at 4-5; Order at 9. The defense additionally proposed, if the Court deemed it necessary, that all internet services at the residence could be cancelled and that Dr. Sheerer's partner and/or mother could serve as third-party custodians. Order at 9. Dr. Sheerer's mother and partner were further prepared to provide assurance that at least one of them, or another family member or responsible person, would be present in the home with Dr. Sheerer at all times.

After the hearing, the Magistrate Judge heard the arguments of counsel and took the matter under advisement. On July 31, he issued an order of detention. D.E. 9.[1]

Dr. Sheerer is detained at Plymouth County Correctional Facility ("PCCF"). He suffers from chronic severe depression and anxiety, which had been stabilized on a regimen of medications prior to his arrest. His access to those medications was abruptly cut off when he was taken into custody, causing him to suffer withdrawal and renewed bouts of depression and anxiety. More than a month after his arrest, after undersigned counsel contacted the General Counsel of PCCF, on August 27, 2024, Dr. Sheerer was finally seen for the first time by a psychiatric nurse practitioner, who prescribed new medications. While we are hopeful PCCF will provide appropriate follow-up and adjust medications and dosage as needed, for the moment Dr. Sheerer remains in a state of acute distress and concerted mental health counseling is not available to him.

**THE MAGISTRATE JUDGE'S DECISION**

The government moved for detention on both flight risk and dangerousness grounds. *See* Order at 9. The charges carry a rebuttable "presumption" of detention. *See* 18 U.S.C. §3142(e) (discussed below). The Magistrate Judge found Dr. Sheerer satisfied the "low threshold" to rebut

[1] While 18 U.S.C. § 3145(b) does not contain a deadline and it is not clear whether Fed. R. Crim. P. 72(a) applies, in an abundance of caution Dr. Sheerer moved to extend the time to seek review the Detention Order through and including August 28, 2024. D.E. 13. That motion was allowed on August 13, 2024. D.E. 14.

the presumption. Order at 8. He also found that Dr. Sheerer's "stable personal history," "lack of any arrest history," and potential surrender of his passport made flight unlikely and thus the government failed to prove " that the risk of flight is so great that no conditions could reasonably assure Defendant's appearance." *Id*. at 8-9.

The Magistrate Judge ultimately detained Dr. Sheerer on dangerousness grounds. He reasoned that:

- The alleged conduct was "compulsive," *see id*. at 13-14;
- The conduct was over the internet;
- The "ubiquity of internet-connected devices" make it "all but impossible to prevent any determined individual – let alone someone as highly educated and well-heeled as Defendant – from obtaining the means of accessing the internet," *id*. at 14; and
- Dr. Sheerer's use of a "burner" email account showed a "demonstrated ability, and willingness, to employ relatively sophisticated evasive measures to avoid dete[c]tion of his possession and distribution of CSAM," *id*. at 15.

At bottom, the Magistrate Judge concluded that Dr. Sheerer should be detained because "there are no conditions that will reasonably assure that Defendant *is unable to access the internet." Id*. at 16 (emphasis added).

**LEGAL STANDARD**

The District Court reviews a Magistrate Judge's order of detention *de novo*. *See United States v. Tortora*, 922 F.2d 880, 883 n.4 (1st Cir. 1990); *United States v. Pierce*, 107 F. Supp. 2d 126, 128 (D. Mass. 2000); *United States v. Davis*, No. 23-cr-10018-DJC, 2023 U.S. Dist. LEXIS 23654, at *1 (D. Mass. Feb. 13, 2023); *United States v. Oliveira*, 238 F. Supp. 3d 165, 167 (D. Mass. 2017); *United States v. Cross*, 389 F. Supp. 3d 140, 142 (D. Mass. 2019).

The Bail Reform Act ("BRA") permits pre-trial detention "[o]nly 'if. . .no condition or combination of conditions will *reasonably assure* the appearance of the person as required and the safety of any other person and the community.'" *United States v. Ploof*, 851 F.2d 7, 9 (1st Cir. 1988) (quoting 18 U.S.C. § 3142(e)) (emphasis added). The government bears the burden to establish (1) by clear and convincing evidence that a defendant is a danger to the community or (2) by a preponderance of the evidence that a defendant poses a serious risk of flight. 18 U.S.C. § 3142(f); *see United States v. Patriarca,* 948 F.2d 789, 792-93 (1st Cir. 1991); *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). If the government so proves, the Court must determine whether any combination of conditions can "reasonably assure" the defendant's appearance and/or the safety of the community. 18 U.S.C. § 3142(e). "[L]liberty is the norm, and detention prior to trial . . .is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

The statutory presumption of detention in this case shifts the initial burden of *production* — not of persuasion — to the defendant, who must "establish a basis for concluding" that conditions of release will reasonably ensure the defendant's appearance and the safety of the community. *United States v. Jessup,* 757 F.2d 378, 381 (1st Cir. 1985) (quoting Senate Judiciary Report on proposed presumption); *see id.* at 385-86 (defendant rebuts presumption by "produc[ing] some evidence that he does not present a special risk"); *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (defendant need only "offer some credible evidence contrary to the statutory presumption"); *United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir. 1986) (defendant simply needs to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985) (burden of persuasion rests with the government, not the defendant). Once the defendant produces some such evidence, the government retains the burden of persuasion. *See United States v. Cross*, 389 F. Supp. 3d 140, 142

(D. Mass. 2019) (once "defendant [] produce[s] 'some evidence' that a condition or combination of conditions can reasonably assure the . . . safety of community . . . , the burden of persuasion shifts to the government to prove that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant and protect the safety of the community").

Separate and apart from the Bail Reform Act, freedom from pretrial confinement is a fundamental right under the Due Process Clause. Any government action infringing on the right must be narrowly tailored to achieve a compelling government interest. *See Salerno*, 481 U.S. at 755; *see also United States v. Newton*, No. 21-cr-10035-ADB, 2023 U.S. Dist. LEXIS 84438, at *8 (D. Mass. May 15, 2023) (finding defendant's continued pretrial detention "r[an] afoul of due process"). The Due Process rights of pretrial detainees are broader than the Eighth Amendment rights of convicted prisoners. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Pre-trial detainees also have a constitutional interest in freedom from deliberate indifference to their medical needs. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *see Brown v. Plata*, 563 U.S. 493, 510-11 (2011).

In determining whether there are conditions that can reasonably assure defendants' appearance and the safety of the community, the Court considers "the nature and circumstances of the offense charged," "the weight of the evidence against the person," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). As part of the consideration of a defendant's history and characteristics, the Court must consider, *inter alia,* the defendant's employment, "past conduct, history relating to drug or alcohol abuse, criminal history," and "whether, at the time of the current offense or arrest, the person was on probation,

on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3).

As discussed below, Dr. Sheerer's detention violates both the BRA and Due Process.

**ARGUMENT**

The Magistrate Judge found that no set of conditions could reasonably assure that Dr. Sheerer would not gain access the internet. Order at 16. This is both a flawed assessment of the facts, and a flawed application of the law. Release conditions can and do prevent accused people from accessing the internet. Dr. Sheerer poses no greater risk of accessing the internet in violation of release conditions than any other defendant in a child pornography case. The proposed release conditions — which are even stricter than the conditions Pretrial Services thought were necessary[2] — can "reasonably assure" the safety of the community: strict home confinement, location

[2] The Magistrate Judge's Order asserts that Probation "is prohibited from considering the nature and circumstances of the charged offense." Order at 3. Mr. Sheerer is not sure what this refers to or the basis for such a "prohibit[ion]," which would devalue Probation's recommendations in every case. The Pretrial Services Report, itself, states: "According to *The Guide to Judiciary Policy*, the following factors fall solely within the province of the judicial officer and are not to be considered by the probation officer: the weight of the evidence; rebuttable presumption; and the potential penalties." But this language plainly does not preclude Probation from considering the nature and circumstances of the alleged offense in its independent assessment of risk and crafting of proposed release conditions.

Indeed, the contents of the Pretrial Services Report here make plain that Probation did consider the "nature of the instant offense" and the allegations concerning the child known to Dr. Sheerer. Probation recommended, among other release conditions: home detention, no contact with minors, and this internet condition:

> Do not possess any computer or other device capable of connecting to the internet, including any tablet, cell phone, television, or gaming console. All computers and other devices capable of accessing the internet in the residence must be password protected and the defendant shall not have access to said password. Family members' laptops, tablets, and smart phones must be removed from the residence when they are not home.

PTSR ¶ 14.

monitoring, no devices, no internet access in the house, no devices belonging to other people left unattended, and round-the-clock supervision organized by one or more third-party custodian(s).

The Order demands a level of certainty that the law does not. Dr. Sheerer respectfully asks this Court to set aside the Magistrate Judge's decision and order his release.

## I. RELEASE CONDITIONS CAN REASONABLY ASSURE THAT DEFENDANTS, LIKE DR. SHEERER, WILL NOT ACCESS THE INTERNET.

The Magistrate Judge found that no set of conditions could "reasonably assure" that Dr. Sheerer would not access the internet. Respectfully, we disagree. Defendants in this District (and every other district) are released every day, under conditions that *reasonably assure* that they will not be able to access the internet. *See, e.g.*, *United States v. Debrum*, No. 15-10292, 2015 U.S. Dist. LEXIS 141777, at *14 (D. Mass. Oct. 19, 2015) (O'Toole, J.) (revoking detention order and adopting conditions similar to those proposed here) ; *United States v. Cross*, 389 F. Supp. 3d 140, 141 (D. Mass. 2019) (Gorton, J.) (vacating Magistrate Judge's order detaining defendant accused of distribution, possession, and receipt of child pornography, who "was taking steps to go beyond the computer screen and arrange an opportunity to commit a contact offense," and ordering his release under the supervision of his fiancé and father, as third party custodians, with a "no-internet" condition); *United States v. Gonzalez-Hernandez*, No. 22-157 (RAM), 2022 U.S. Dist. LEXIS 134627, at *10 (D.P.R. July 26, 2022) (revoking Magistrate Judge's detention order and releasing defendant accused of child enticement who used the internet to communicate with minor victim, under conditions including home confinement with location monitoring, a third-party custodian, and no access to internet-enabled devices).

Conditions accepted by other courts include, as recommended here, strict home confinement, backed by location monitoring; discontinuation of internet service at the home;

removal of devices; and the supervision of a trustworthy third-party custodian. *See Debrum*, 2015 U.S. Dist. LEXIS 141777, at *14 (reversing Magistrate Judge's detention order and finding that such conditions would "reasonably assure" the defendant – accused of coercing multiple minor victims into sending sexually explicit images of themselves to him over the internet – would not access the internet and therefore would reasonably assure the safety of the community).

"Reasonably assure" does not mean "absolutely guarantee." *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) ("the safety of the community can be reasonably assured without being absolutely guaranteed"), *cited in United States v. Gonzalez-Hernandez*, No. 22-157 (RAM), 2022 U.S. Dist. LEXIS 134627, at *13 (D.P.R. July 26, 2022). The hypotheticals posited by the Magistrate Judge reflect a demand for certainty that is not required. He reasoned that Dr. Sheerer should be detained because he could thwart the release conditions through

> [a]s simple an expedient as surreptitiously acquiring a cellular-enabled smartphone[,] [which] would render all such precautions for naught. Given the ubiquity of internet-connected devices, it is all but impossible to prevent any determined individual—let alone someone as highly-educated and well-heeled as Defendant—from obtaining the means of accessing the internet.

Order at 14.

But if the question were whether one could ever conceive a hypothetical way for a defendant to violate his conditions, no internet-based offenders would ever be released. On home confinement backed by location monitoring, Dr. Sheerer could not, himself, go out and buy a "cellular-enabled smartphone." Nor could he order one unless someone in his family acted as an accomplice. It is "all but impossible" to prevent *any* individual — with 100% certainty — from accessing the internet. But that is not the standard the law requires. *See Debrum*, 2015 U.S. Dist. LEXIS 141777, at *13-14 ("[t]he magistrate judge theorized various situations in which the defendant may pose a risk to the public if he were released. In my judgment the evidence . . . does

not suggest that those theoretical dangers are substantially present. The [BRA] requires *reasonable* assurance, not a guarantee, of safety") (emphasis in original) (citation omitted).

## II. THE CONDUCT ALLEGED HERE DOES NOT SUPPORT A FINDING THAT DR. SHEERER POSES A RISK OF OFFENDING ON THE INTERNET THAT IS MEANINGFULLY GREATER THAN THAT POSED BY AN "ORDINARY" CHILD PORNOGRAPHY DEFENDANT.

The Magistrate Judge essentially relied on three alleged circumstances to distinguish this case from "'ordinary' CSAM offenses." Order at 12. But these alleged circumstances, when scrutinized, do not meaningfully aggravate the risk of illicit internet access.

First, Dr. Sheerer's alleged use of a "burner" email address hardly shows "a demonstrated ability, and willingness, to employ relatively sophisticated evasive measures to avoid detention of his possession and distribution of CSAM." Order at 15. Nothing about the creation of a "burner" email address suggests Dr. Sheerer is any more technologically sophisticated, evasive, or compulsive than any "run of the mill" offender. Indeed, "burner" emails are ubiquitous to protect personal privacy and avoid unwanted advertising; they do not, by themselves, demonstrate malign intent or sophistication.[3]

Moreover, child pornography is almost always exchanged over encrypted applications, by people using screen names, multiple accounts, and often taking far *more* elaborate measures to maintain anonymity than the simple use of a "burner" email. The Magistrate Judge misapprehends both today's internet and today's child pornography defendants in suggesting that the use of a

---

[3] *See* https://www.pcmag.com/encyclopedia/term/burner-email (Definition of "Burner Email": "An email account set up to temporarily receive messages and attachments when people do not want to divulge their primary email address. A burner email address can also be used as a permanent auxiliary account that receives unimportant messages. Signing up for free services is guaranteed to create unwanted emails because addresses are sold to marketing organizations for extra revenue. It takes very little time for an email address to wind up on countless mailing lists and even the Dark Web.").

"burner account" shows a "self-professed familiarity with evasive measures designed to avoid dete[c]tion," any more than *any* child pornography defendant so shows. Order at 16.

Second, the allegations concerning the "child known to" Dr. Sheerer — while admittedly concerning (and inflammatory) — have no bearing on the risk that Dr. Sheerer will *access the internet* despite conditions. Dr. Sheerer will have no contact with or access to that child. There is no evidence he ever physically abused that child. Indeed, there is no suggestion he poses a risk of hands-on offending against any other child (and the Magistrate Judge did not suggest otherwise). Dr. Sheerer lost his employment. He would be subject to a condition prohibiting contact with minors, and there are no minors in his home. The alleged use of a picture of the naked child known to Dr. Sheerer as "currency" to gain entry to illicit online groups, while disturbing, does not meaningfully increase the likelihood that he would *access the internet* in violation of release conditions.

The Magistrate Judge suggests the alleged conduct against the known child is relevant because it shows an increased level of compulsion. *See id*. at 14 ("It is fair to infer that Defendant either created, or abetted another in creating, a naked photograph of a five-year old child who was entrusted to his care. This conduct, too, reflects a degree of compulsion beyond the limits associated with 'ordinary' CSAM offenses involving pre-existing images"). But that rings hollow. The collection of child pornography is, in nearly every case, a compulsive activity. The allegations concerning the known child will no doubt be used as an aggravating factor by the government at later stages in this case. But the bail determination is solely about whether conditions can reasonably mitigate danger—here, the danger of accessing the internet despite strict conditions.

Third, the Magistrate Judge's characterization of Dr. Sheerer's interactions with other collectors of child pornography as "abetting" *their* production of images similarly takes a routine

characteristic of child pornography offenses and treats it as an extraordinary one. *See* Order at 11-14, 16. The Magistrate Judge suggests the alleged messaging with other users is relevant to show Dr. Sheerer is more "compulsive" than most, *see id.* at 16, but that logic does not withstand scrutiny. Put simply, messaging with other users and asking them to create and/or provide images is generic conduct in this arena. It does not "abet[] . . . child sexual molestation" any more than *any* participation in the market for the images. *Id*.

**CONCLUSION**

For these reasons, Dr. Sheerer respectfully requests the Court hold a hearing and release him under the pre-trial conditions he proposed, including strict home confinement, location monitoring, no devices, no internet access in the house, and round-the-clock supervision organized by one of two potential third-party custodians. Release would also afford Dr. Sheerer to engage in intensive mental health treatment, which could also be made a condition of release.

Respectfully submitted,

*/s/ William Fick*

WILLIAM FICK, ESQ. (BBO #650562)
AMY BARSKY, ESQ. (BBO # 601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
WFICK@FICKMARX.COM
ABARSKY@FICKMARX.COM

**Certificate of Service**

I hereby certify that this document and any attachments filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 28, 2024.

*/s/ William Fick*